HENRY A. NEELY *vs.* SARAH A. HOSKINS, and others.

Penobscot. Opinion March 29, 1892.

*Deed. Trust. Condition.*

Where a grantor conveyed a parcel of land with a church edifice thereon with a warranty against claims through or under himself, to the Bishop of the Protestant Episcopal church for the diocese of Maine, receiving five hundred

dollars therefor, not an extremely inadequate price under the circumstances for the interest actually conveyed, the money paid having been collected through contributions from friends of the church, the conveyance being made to the bishop " and his successors in office, upon the condition that it [the property conveyed] shall be forever held for the use of the Protestant Episcopal church in Old Town," the grantor having at the date of the conveyance a technical fee in the estate subject to a right of perpetual use by the church, excepting as to a basement hall in the building, in which the grantor had a qualified right of use : *it was held,* that the deed is not upon a condition that can be the foundation for any forfeiture to the grantor or his heirs, and that the instrument of conveyance merely creates a trust in the bishop for the benefit of the parish at Old Town, and enforceable in equity only in its behalf.

ON REPORT.

This was a writ of entry brought by the plaintiff as the successor of George Burgess, late Bishop of the Protestant Episcopal church in the Diocese of Maine, to recover possession of a certain lot of land and edifice thereon known as St. James" church and lot in Old Town.

The writ is dated December 18, 1888. Plea, general issue, with a brief statement alleging that one Ira Wadleigh conveyed the premises to George Burgess and his successors upon condition, and that the condition had been broken and the estate forfeited to the defendants as sole heirs of said Wadleigh.

Other facts stated in the opinion.

The defendants claimed that the property was conveyed on condition that it should be occupied and used for religious services by the local parish, or possibly by the bishop ; that it has been abandoned by the parish ; and that this abandonment is proved, partly by the church's being allowed to fall into decay, partly by a transfer of the religious services by the officers of the parish to a building other than the church, and partly by other evidence. They did not appear to deny the bishop's title, but contended that his estate was forfeited by breach of the condition under which they allege he holds.

From the evidence introduced by the plaintiff, it appeared that up to the 21st November, 1886, the premises were occupied by the parish, under the bishop, for religious services and other uses. The church was not in thorough repair, but was tenantable. The parish had gradually accumulated a sum of money,

with which, as soon as it should seem advisable, it intended to repair or to rebuild the church.  This repairing or rebuilding was delayed, in part because the members had not fully agreed upon which should be done,— repairing or re-building,— and in part because it was desirous of letting the fund grow a little larger before it did either.  In November, 1886, the parish officers, by reason of the difficulty of warming the church properly during the winter, transferred the services temporarily by invitation of one of its wardens, to a room in his newly-built dwelling-house, where he had a front room which he had not furnished, and which it was thought, would afford a sufficiently convenient place for the services through the winter, — the intention being to resume service in the church the next spring or summer.  The parish, is a small one, the average number of persons worshipping with it being about thirty.

The services were not resumed in the church the following spring or summer; the reason given by the parish officers being that, although they always intended to go back, they let matters run along as men often do ; and that this inaction was aided by their idea that they would thus avoid a double removal, for they hoped that during the year the old church would be either re-built or repaired.  In November, 1887, the two defendants, who are granddaughters of Wadleigh entered on a claim of breach of condition ; and in April, 1888, they seized the possession of the church, thus preventing the return of the parish. During all this time, the parish officers held the keys of the church, and much of the parish property was kept in the church, where it had been left when the services were transferred to the dwelling-house.

*Geo. T. Sewall, and N. & H. B. Cleaves,* for plaintiff.

Conveyance in fee, upon trust or in restriction : 2 Wash. R. P. § *447 ; *Gray* v. *Hussey,* 83 Maine, 329 ; *Stanley* v. *Colt,* 5 Wall. 165 ; *Wright* v. *Wilkins,* 2 Best & Smith, 248 ; 1 Sug. Powers, 122, 7th ed ; *Hoyt* v. *Kimball,* 49 N. H. 322 ; *Fuller* v. *Arms,* 45 Vt. 400 ; *Chapin* v. *Harris,* 8 Allen, 596 ; *Sohier* v. *Trinity Church,* 109 Mass. 19 ; *Rawson* v. *School District,* 7 Allen, 125 ; *Episcopal City Mission* v. *Appleton,* 117 Mass.

329 ; *Stone* v. *Houghton*, 175 Mass. 135 ; *Ayling* v. *Kramer*, 133 Mass. 12 ; *Saltonstall* v. *Propr's*, 7 Cush. 201 ; *Ayer* v. *Emery*, 14 Allen, 70 ; *Brown* v. *Caldwell*, 23 W. Va. 187 ; *Paschell* v. *Passmore*, 15 Pa. St. 295–301 ; *McKnight* v. *Krentz*, 51 Pa. St. 333 ; *Homer* v. *Chicago Ry. Co.* 38 Wis. 165 ; *Carter* v. *Branson*, 79 Ind. 14 ; *Wier* v. *Simmons*, 55 Wis. 637 ; *Jackson* v. *Brownson*, 7 Johns. 235 ; *Austin* v. *Cambridgeport Parish*, 21 Pick. 215 ; *Post* v. *Weil*, 115 N. Y. 366 ; *Bac. Abr.* (Covenant, A.) ; Shep. Touch, 161 ; 4 Kent. Com. 132 ; *Clement* v. *Burtis*, 121 N. Y. 709 ; *Mason* v. *Manchester*, 9 Wheat. 55 ; *Crane* v. *Hyde Park*, 135 Mass. 147 ; *Lynde* v. *Hough*, 27 Barb. 415 ; *Hadley* v. *Hadley M'f'g Co.* 4 Gray, 145 ; *Osgood* v. *Abbott*, 58 Maine, 81 ; *Emerson* v. *Simpson*, 43 N. H. 475 ; *Mead* v. *Ballard*, 7 Wall. 290 ; *Voris* v. *Renshaw*, 49 Ills. 425 ; *McKissick* v. *Pickle*, 16 Pa. St. 140 ; *Mills* v. *Evansville Seminary*, 58 Wis. 135.

Waiver of condition : *Hooper* v. *Cummings*, 45 Maine, 359 ; *Hubbard* v. *Hubbard*, 97 Mass. 192 ; *Ludlow* v. *R. R. Co.* 12 Barb. 440 ; *Andrews* v. *Senter*, 32 Maine, 397 ; *Guild* v. *Richards*, 16 Gray, 309.

Right to enforce forfeiture lost by conveyance after alleged breach of condition : *Craig* v. *Franklin County*, 58 Maine, 479 ; *Nicoll* v. *R. R. Co.* 12 Barb. 460 ; 1 Add. Cont. *261 ; *Rice* v. *R. R. Co.* 12 Allen, 142 ; 5 Vin. Abr. Condition, I, d, 11 ; *Bowen* v. *Bowen*, 18 Vt. 534 ; *Peaks* v. *Blethen*, 77 Maine, 510.

*Charles P. Stetson*, for defendants.

Counsel cited : *Austin* v. *Cambridgeport Parish*, 21 Pick. 215 ; *Hayden* v. *Stoughton*, 5 Pick. 528 ; *Allen* v. *Howe*, 105 Mass. 241–2 ; *French* v. *Old South Soc.* 106 Mass. 479 ; *Tilden* v. *Tilden*, 13 Gray, 104.

PETERS, C. J. This is a real action to recover a lot of land with a church edifice thereon, situated in Old Town, the demandant claiming under a deed to himself from Ira Wadleigh, dated November 21, 1885, which, omitting formal parts and description of premises, is as follows :

"Know all men by these presents, that I, Ira Wadleigh, now of Sacramento in the state of California, formerly of Old Town, Maine, by Joseph B. Moor, of Bangor, my lawful attorney duly and legally authorized to make and execute and deliver these presents, in consideration of five hundred dollars to me in hand paid by George Burgess, of Gardiner, Bishop of the Protestant Episcopal church for the Diocese of Maine, the receipt whereof is hereby acknowledged, do hereby give, grant, sell and convey unto the said George Burgess, Bishop as aforesaid, upon the condition that it shall be forever for the use of the Protestant Episcopal Church at Old Town, and to his successors in said office forever, a certain lot of land on the east side of Marsh's Island in Old Town, county of Penobscot, Maine, and all the buildings, fixtures and property thereon at the date hereof, known as St. James' church and lot, to wit : . . . Reserving and excepting from said conveyance, to said Wadleigh and to J. H. Hilliard, their heirs and assigns, the occupation of three pews, to wit, to said Wadleigh pews numbered eleven and thirteen, and to said Hilliard the pew heretofore conveyed to him by deed from said Wadleigh or the parish of St. James' church. . . .

"To have and to hold the aforegranted premises, with all the privileges and appurtenances thereof, to the said George Burgess and his successors in said office forever. And I do covenant with said grantee and his successors that said premises are free of all incumbrances created by me, and that I and my heirs shall and will warrant and defend the same to the said grantee and his successors forever, against the lawful claims and demands of all persons claiming by, through or under me.

"In witness whereof, I, the said Wadleigh, by Joseph B. Moor, my attorney, authorized as aforesaid, for the consideration aforesaid, have hereunto set my hand and seal this　day of　, in the year of our Lord one thousand eight hundred and sixty-five."

The defendants are grantees and heirs of Ira Wadleigh, now deceased, and claim that the foregoing is a deed upon condition subsequent, that the condition has been broken, and that the estate has reverted to themselves as such heirs.

Upon the question of forfeiture and reverter, and of estoppel and waiver, much evidence is adduced on both sides and many arguments urged. The demandant's counsel, however, deny that the conveyance is upon condition, contending that it is to be construed as a deed of trust merely. If this position be tenable, and we feel constrained to so hold, all the other questions that have appeared in the case become superseded thereby.

It is not expressed in the deed that the estate shall be revertible for any cause, but it is contended that the idea is implied. The term condition does not necessarily import it. Condition may mean trust and trust mean condition, oftentimes. The construction must depend upon the context and any admissible evidence outside of the deed.

An examination of certain prior instruments of conveyance to Wadleigh, from the parish, named in his deed to the Bishop, will very much assist in showing the intention of the parties as contained in the deed in question.

The parish, having a full title to the property, excepting as encumbered by mortgage, conveyed, on July 8, 1852, to Wadleigh certain pews in the house by a deed of the following form :

"Know all men by these presents, that we, the undersigned, wardens of St. James' church, in Old Town, being duly authorized in the premises, in consideration of large claims against the parish given up to us in said capacity by Ira Wadleigh, Esq., which we do hereby acknowledge, have bargained, sold and conveyed, and by these presents do hereby bargain, sell and convey unto said Wadleigh and his heirs and assigns forever the right to occupy, use and enjoy forty-five pews in St. James' church, in Old Town aforesaid, and the privileges to said pews belonging, said pews being numbered as below.

"This conveyance is on the condition that neither the said Wadleigh nor his heirs or assigns shall change the worship in said church to any other denomination than that of the Protestant Episcopal Church, or in any manner consent that it may be changed, and it shall be void and the property revert, if so changed either wholly or in part.

"To have and to hold the rights aforesaid to him, said Wadleigh and his heirs and assigns forever upon the condition aforesaid. And we do hereby in our said capacity covenant with said Wadleigh that said pews are free of all incumbrances, and that we in our said capacity will, and the wardens of said church shall, warrant and defend said pews on the condition aforesaid, to him, said Wadleigh and his heirs and assigns forever against the lawful claims and demands of all persons.

"In testimony whereof, we the wardens of the church aforesaid, have set their hands and affixed their seals this eighth day of July, A. D., 1852, in our capacity of wardens.

"The pews hereby conveyed are numbered as follows : . . .

"Signed, sealed and delivered in the presence of us.

"D. C. Weston.          Ira Wadleigh, (L. S.)

                         Cony Foster." (L. S.)

On the same day the parish made to him another deed, (omitting a part of the description of the premises) as follows :

"Know all men by these presents, that we, Ira Wadleigh and Cony Foster, wardens of the parish of St. James' Church in Old Town, Maine, being duly authorized in the premises, in consideration that Ira Wadleigh, Esq., of said Old Town, has given to the said parish a receipt in full of all demands, and has also given to said parish a full release and discharge of a mortgage against said parish, recently assigned to said Wadleigh by Samuel Blake, Esq,, do hereby give, remise, release, sell and forever quit claim unto the said Wadleigh, his heirs and assigns, a certain parcel of land, with the church and one other building thereon, lying on the east side of Marsh Island in said Old Town, viz : Lot numbered fourteen, according to Herrick's plan of part of lot numbered fifteen, Holland's survey and plan, and bounded as follows : . . . being the same lot conveyed to the parish by Turner Cowing and James Green, November 26th, 1849.

"To have and to hold the aforementioned premises with all the privileges and appurtenances to the same belonging, to the said Wadleigh and to his heirs and assigns forever, subject to the following reservations and conditions :

"The said parish reserves to itself forever the ownership of all the pews in said church together with free, sole, unconditional, uninterrupted and exclusive use, occupation and control of said church with its appurtenances, except the basement hall, forever. This reservation includes the furnace and cellar in the rear of said hall, with the right of access at all times to and from said cellar through said hall.

"The parish reserves the right to repair and alter said church and to rebuild it, if destroyed from any cause, on the old foundations, free of all charges of ground rent forever. It is understood, however, that the insurable interest in said church and its appurtenances is to be and remain in the said Wadleigh, his heirs, representatives and assigns, the insurance thereof to be made in his and their names and for his and their use and benefit, the said parish divesting itself of all insurable interest; and the foregoing reservations are made subject to this qualification :

"The insurable interest thus made available to the said Wadleigh is intended as a compensation in part for the great expenditures and sacrifices which he has made in behalf of said parish in the erection of said church. The following are the conditions on which this deed is given :

"Condition first is that neither the said Wadleigh nor his heirs nor assigns shall ever use said basement hall, nor allow, nor suffer it to be used on Sundays; so that the church services may never be disturbed on this holy day by any movements or noise underneath. Nor shall said hall be used on any other day of the week for any purpose that may be an annoyance to the parish or disturb the week day services in said church.

"Condition second is that so much of the lot hereby conveyed as lies east of a line twenty feet distant from the west end of said church, and parallel thereto, shall always be left with said church for its accommodation.

"In witness whereof, we, the said Wadleigh and Foster, have hereunto set our hands and seals this eighth day of July, A. D., eighteen hundred and fifty-two, in their capacity of wardens aforesaid.                    Ira Wadleigh, (L. S.)
                    Cony Foster. (L. S.)

"Signed sealed and delivered in the presence of:

Nathan Weston,

"Danl. C. Weston."

These deeds as explained by other facts, show quite conclusively that the deed to the Bishop was intended to be a conveyance in trust, and not upon any condition that could work a forfeiture to the grantor. The only condition that was created lies between the Bishop and the parish.

One very influential fact tending to show the correctness of this conclusion, is that the conveyance was not a gift or donation from Wadleigh, but a purchase from him by the Bishop, who collected the money for the purpose from sources outside of the parish. Then there is the further fact that Wadleigh conveyed not much more than a technical title to the property, already loaded with restraints and conditions in favor of the parish, giving only a quit claim deed or what amounts to such. He had not the estate to convey. At most he had but a limited right of possession and use in a basement hall in the building, and a right of occupation in a considerable number of pews. It would certainly be unusual to annex such a condition as is pretended upon a purchase of such an interest in such a property.

It will be seen from the deed to Wadleigh what a burden was imposed upon his estate by conditions and restrictions. " The parish reserves to itself forever the ownership to all the pews in the church, together with the free, sole, unconditional, uninterrupted and exclusive use, occupation and control of the church and its appurtenances, except the basement hall." It also reserves some right of use of the hall and restricts the grantee in his use of it. And it retains the perpetual right of repairing the church, and to rebuild the same without payment of rent in case of its destruction by fire.

Besides, the testimony shows that the deed of the parish to Wadleigh includes valuable land adjoining the church, not included in the deed from him to the Bishop. The latter deed excludes enough land for two good house-lots, and does not even include the territory upon which the rectory belonging to the church stood at the time.

In view of all the circumstances, the witness Sewall, who would be perhaps more likely than any other person to be informed on the question, testifies that the five hundred dollars paid was an adequate consideration for the interest purchased. At all events, that sum was satisfactory to the grantor, who had removed from Old Town and was then in California. The parish was evidently poor and the pews neither valuable nor salable. Of course, if the premises were worth no more than that sum to sell, there would be no more value in them to the grantor upon a reverter. The heirs are mistaken in supposing, if such be their view, that a forfeiture of the interest to them would discharge the conditions imposed upon the property by prior deeds. In the light of these facts, it seems unreasonable to believe that the grantor Wadleigh would have asked for conditions of forfeiture, or that the grantee would have submitted to any.

Furthermore, there is every reason to believe that the grantor never conceived the idea of inserting any condition for his own benefit in his conveyance. The deed was executed in his name and for him by Joseph B. Moor, a son-in-law, under the authority of a general power of attorney to take possession of all his real and personal property in Penobscot county, and any property in which he was interested, and sell the same or any part thereof, for such sums or prices and on such terms as to him should seem meet. The same grantor sells to Charles Wadleigh a balance of the church lot not covered by his deed to the Bishop, describing it as " all the land west of the premises heretofore by me conveyed to George Burgess, Bishop of the Diocese of Maine, *in trust for the parish* of St. James."

He not only thus describes the conveyance as a trust, but the Bishop does the same thing, who undoubtedly dictated the form of the deed by the following written communication :

" Gardiner, May 3, 1865.

"My Dear Sir : I have written to Mr. Joseph B. Moor, of Bangor, who Mr. Wadleigh authorized, by his power of attorney, to make a deed of his interest in the church at Old Town ; and have informed him that I would request you, as Mr. Wad-

leigh suggested, to prepare the deed, and would have the money, $500, in readiness at the time of its execution.

"The deed, it appears to me, should be made to me, as Bishop of the Protestant Episcopal church in Maine, and to my successors in office, *in trust for the parish* of St. James' church, Old Town.

"You will judge best whether it should be a quit-claim deed or more. You will also satisfy yourself, I presume, by examination, that there is no other incumbrance.

"Mr. Wadleigh reserves five pews; and they should be designated. He fixes the boundary at twenty-five feet west of the church. If you will send me the draft of the deed before it is executed, I will send it back with a check for the money.

Respectfully yours,      George Burgess."

Hon. G. P. Sewall."

If it be inquired why there were inserted in the deed to the Bishop the words, "upon the condition it shall be forever held for the use of the Protestant Episcopal church in Old Town," the answer is that the Bishop was buying the interest for the parish and not for himself. He collected the money paid for the purpose for the parish and not for himself. Therefore he was to hold the property for the benefit and use of the parish. Had the bishop taken a deed to himself in unqualified terms, the parish would have stood in the same relation towards him as they had before stood with Wadleigh. The object was to extend relief to the parish and obtain its freedom from such claim in the hands of Wadleigh or any one else. It was not to have the claim of Wadleigh assigned, but to extinguish it.

Undoubtedly the deed contains a condition for the benefit of the parish, but not for Wadleigh's benefit. It operates between the parish and the Bishop, and is not available otherwise. Every trust implies a condition that the trustee will faithfully administer the trust. Equity would enforce this trust at the instance and for the benefit of the parish. But the heirs of Ira Wadleigh could not complain. *Sohier* v. *Trinity Church*, 109 Mass. 1.                           *Judgment for demandant.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.