ELIJAH T. POND *vs*. CARROLL S. DOUGLASS et als.

Piscataquis.   Opinion October 8, 1909.

*Deeds.   Reservations.   Reverter.   Determinable Fee.   Title.   Revised Statutes,*
*chapter 75, section 1 ; chapter 106, section 24.*

The estate known in law as a base, determinable or qualified fee with the possibility of a reverter is recognized in Maine and is descendible.

Where one grants a base or determinable fee since what is left in him is only a right to defeat the estate so granted upon the happening of a contingency, there is no reversion in him, i. e., he has no future vested estate in fee; only what is called a naked possibility of reverter, which is incapable of alienation or devise although it descends to his heirs.

The possibility of reverter denotes no estate but only the possibility to have the estate at a future time.   One kind of such possibility is that a common law fee other than a fee simple may revert to the grantor by the natural termination of the fee.   The possibility of reversion expectant on such an estate is left in the person who limits it and in the meantime the whole estate is in the grantee or owner subject only to this possibility of reverter in the grantor.   The grantee has an estate which may continue forever though there is a contingency which when it happens will determine the estate.   This contingency cannot with propriety be called a condition.   It is a part of the limitation and the estate may be termed a fee.

A naked possibility of a reverter of a title to land does not denote an estate or any present legal interest in it, and gives no right of entry into it.   It is not an existing right of reversion but a bare possibility which is uncertain.

The statutes of Maine contain no express provision relating to the conveyance of the possibility of a reverter of the title to real estate.

Revised Statutes, chapter 75, section 1, providing that " a person owning real estate and having a right of entry into it, whether seized of it or not, may convey it or all his interest in it by a deed," etc., has never been held by the court of Maine to include a mere possibility of a reverter.

On April 4, 1834, Jesse Washburn conveyed to his son Peleg Washburn, his homestead farm by warranty deed containing the following clauses, namely: " Excepting . . . . one half acre reserved for a ' free meeting house ' said farm now containing about one hundred acres . . . . Note, should the proprietors of said meeting house take less then half an acre of land for the use of said meeting house, or should the land revert back by reason of non-occupation for that purpose, then the land shall be considered to belong to the farm and shall pass with it to the said Peleg." On April 8, 1834, Jesse Washburn conveyed the reserved land to the pro-

prietors of the meeting house by warranty deed with the following habendum. "To have and to hold the same to the said proprietors, their heirs and assigns to their use and benefit so long as said lot shall be occupied for a meeting house or house of public worship." On the 22nd day of April, 1835, Peleg Washburn conveyed back to Jesse Washburn the homestead farm conveyed to him the year before by warranty deed "excepting one half acre reserved for a free meeting house. Prior to May 4, 1890, the meeting house lot ceased to be occupied for a meeting house or house of public worship.

*Held:* That the possibility of reverter of the title to the meeting house lot was not transferred by the deed from Jesse Washburn to Peleg Washburn, but remained in Jesse Washburn after his deed to the proprietors of the meeting house, and when after his death the qualified fee was terminated by the cessation of the occupancy of the lot for a house of public worship, the reversion descended to those who were the heirs of Jesse Washburn at the time of his death.

On report. Judgment for plaintiff.

Writ of entry "brought by the plaintiff against the defendants wherein the plaintiff demands five-eighths in common and undivided of certain real estate in the village of Guilford," Piscataquis County.

Plea, the general issue, with written claim for betterments as provided by Revised Statutes, chapter 106, section 24.

At the conclusion of the evidence, the case was reported to the Law Court for decision, with the following stipulation: "If the plaintiff is not entitled to recover, judgment shall be rendered for defendant; if the plaintiff is entitled to recover, the case shall be remanded to nisi prius, for assessment by commissioners already agreed upon by the parties, of defendant's compensation for buildings and improvements under the provisions of R. S., chapter 106, section 24."

The case is stated in the opinion.

*J. S. Williams, and Warren C. Philbrook,* for plaintiff.

*Hudson & Hudson,* for defendants.

SITTING: WHITEHOUSE, SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J. This is a writ of entry brought by the plaintiff to recover five-eighths of a small parcel of land which was for

many years occupied as the site for a meeting house in Guilford, and prior to April 4, 1834, constituted a part of the homestead farm of Jesse Washburn. The plaintiff derived title through intermediate conveyances from some of the heirs of Jesse Washburn, who died prior to January 1, 1865. But it is not in controversy that the plaintiff holds conveyances covering twenty-one fortieths of the lot.

On April 4, 1834, Jesse Washburn conveyed to his son Peleg, his homestead farm by warranty deed containing the following clauses, namely: "Excepting . . . . one half acre reserved for a ' free meeting house ' said farm now containing about one hundred acres. . . . . Note, should the proprietors of said meeting house take less than half an acre of land for the use of said meeting house, or should the land revert back by reason of non-occupation for that purpose, then the land shall be considered to belong to the farm and shall pass with it to the said Peleg."

It appears that prior to the execution of this deed Jesse Washburn had contracted to sell to the proprietors of the Guilford free meeting house, a lot of land on which to build a church. On April 8, 1834, he conveyed the lot to the proprietors of the meeting house by warranty deed with the following habendum. "To have and to hold the same to the said proprietors, their heirs and assigns to their use and benefit so long as said lot shall be occupied for a meeting house or house of public worship." It appears that the church was soon after erected upon that site but that the lot ceased to be occupied for a meeting house or house of public worship prior to May 4, 1890. On the 22nd day of April, 1835, Peleg Washburn conveyed back to his father Jesse Washburn the homestead farm conveyed to him the year before by warranty deed "excepting one half acre reserved for a free meeting house."

It is contended in behalf of the plaintiff that the deed from Jesse Washburn to the proprietors of the meeting house conveyed a qualified, base or determinable fee to the church society with only the naked possibility of reverter to the grantor Jesse Washburn but that such a mere possibility of reverter was incapable of alienation or devise, although it would descend to his heirs. It is accordingly

claimed in the first place that the deed from Jesse Washburn to Peleg of April 4, 1834 was not operative to convey such an interest as this possibility of reverter, and when the lot ceased to be occupied for church purposes the title descended to the heirs of the grantor Jesse Washburn.

It is further contended that even if such a possibility of reverter had been the subject of assignment or conveyance by deed, that the terms of the note contained in the deed from Jesse to Peleg Washburn, are not apt and sufficient to operate as a present conveyance of the interest to Peleg but only as a personal covenant between the parties that if the title to the lot should revert while Peleg held the homestead it should, in the language of the note, "be considered to belong to the farm." Finally it is contended that if the possibility of reverter was conveyed by Jesse to Peleg, it was re-conveyed by Peleg to Jesse by his deed of April, 1835, and that it was vested in Jesse at the time of his death. On the other hand it is contended in behalf of the defendants that this reversionary interest was conveyed by Jesse Washburn to Peleg by the deed of April 4, 1834 and that by reason of the omission in Peleg's deed to his father of the note found in the deed of the latter to Peleg, this alleged reversionary interest was not re-conveyed to Jesse Washburn. Peleg's deed to his father contains only the exception of this half acre which had already been conveyed to the proprietors of the meeting house. It is accordingly claimed that when the lot ceased to be occupied for a meeting house or house of public worship, the title thereto vested in Peleg Washburn and the defendants hold title to the entire lot by virtue of conveyances from him.

The estate known in law as a base, determinable or qualified fee with the possibility of a reverter is recognized in this State and Massachusetts and is descendible. *Moulton* v. *Trafton*, 64 Maine, 218 ; *Farnsworth* v. *Perry*, 83 Maine, 447 ; *First Univ. Soc.* v. *Boland*, 155 Mass. 171.

By his deed conveying this lot to the proprietors of the free meeting house "to their use and benefit so long as said lot shall be occupied for a meeting house or house of public worship" Jesse Washburn conveyed to the Society a qualified fee determinable on

the cessation of the use of the lot for church purposes and retained
in himself a mere possibility of reverter. "Where one grants a base
or determinable fee since what is left in him is only a right to defeat
the estate so granted upon the happening of a contingency, there is
no reversion in him, that is he has no future vested estate in fee;
only what is called a naked possibility of reverter, which is incapa-
ble of alienation or devise although it descends to his heirs."
Tiedeman Real Prop. (3d Ed.) sec. 291. So in Challis on Law
of real property, page 63, the author says: "Possibility of reverter
denotes no estate but as the name implies only the possibility to have
the estate at a future time. Of such possibilities there are several
kinds of which two are usually denominated by the term now under
consideration :

(1) The possibility that a common law fee may return to the
grantor by breach of a condition subject to which it was granted;
and (2) the possibility that a common law fee other than a fee
simple may revert to the grantor by the natural termination of the
fee." The possibility of reversion expectant on such an estate is
left in the person who limits it and "in the meantime the whole
estate is in the grantee or owner subject only to this possibility of
reverter in the grantor. The grantee has an estate which may con-
tinue forever though there is a contingency which when it happens
will determine the estate. This contingency cannot with propriety
be called a condition. It is a part of the limitation and the estate
may be termed a fee." 1 Preston on Estates, 484; See also *Gray
on Rule v. Perpetuity*, sec. 13, 2 Washburn on Real Property,
4th Ed. sec. 390. In accordance with this rule of the common
law was the recent decision in *North v. Graham*, 235 Ill. 173,
(1908), 85 No. East 267, in which the facts were strikingly analo-
gous to those in the case at bar. In that case a deed of the lot in
question was made to the trustees of a Methodist Church containing
this provision : "Said tract of land above described to revert to
the party of the first part whenever it ceases to be occupied for a
meeting house or church." It was held in an elaborate opinion
that the estate taken by the church was a determinable or qualified
fee; that the grantor retained no future vested estate in fee nor

reversion, but merely a naked possibility of reverter which was incapable of alienation or devise though it might descend to his heirs; and that as the grantor of this qualified fee died possessed of the possibility of reverter before the termination of the fee his interest descended to those who were his heirs at law at the time of his decease and not to those who were his heirs at the termination of the qualified fee; citing *Presbyterian Church* v. *Venable,* 159 Ill. 215, (42 No. East. 836); *Harrison* v. *Weatherby,* 180 Ill. 418. (54 N. E. 237); *Nicoll* v. *N. Y. & Erie R. R. Co.,* 12 N. Y. 121.

Indeed it is not controverted by the counsel for the defendants that this rule of the common law laid down by all the textwriters and recognized and enforced by the Illinois court in the very late decision above cited of *North* v. *Graham,* is the law of this State unless it has been abrogated by our legislature. But our statutes contain no express provision relating to the conveyance of such a possible interest in real estate, and the most comprehensive provision respecting conveyances by deed is found in R. S., chapter 75, section 1, which declares that "a person owning real estate and having a right of entry into it, whether seized of it or not, may convey it, or all his interest in it by a deed" &c. But a naked possibility of a reverter of a title to land does not denote an estate or any present legal interest in it, and obviously gives no right of entry into it. It is not an existing right of reversion but a bare possibility which is uncertain. The provision above quoted is a condensed revision of the statute as it existed in 1834, and it has never been held by our court to include a mere possibility of a reverter. The statutes of Illinois, contain more extended and explicit innovations than our own upon the rules of the common law respecting conveyances by deed, including interests in lands of which the grantor is not in possession, but they were not construed by the court to embrace the possibility of a reverter in *North* v. *Graham,* supra; nor has any authority been brought to the attention of the court in which equivalent terms in other statutes have been so construed. If it be deemed advisable to make such a possibility of an interest the subject of a conveyance by deed, it is the

province of the legislature to so provide by an appropriate amendment to our statute.

In the case at bar, the possibility of reverter of the title to the lot in question was not transferred by the deed from Jesse to Peleg Washburn, but remained in the former after his deed to the Proprietors of the Meeting House ; and when after his death the qualified fee thereby conveyed was terminated by the cessation of the occupancy of the lot for a house of public worship, the reversion descended to those who were the heirs of Jesse Washburn at the time of his decease. As hereinbefore stated the plaintiff acquired title by deeds from these heirs of twenty-one fortieths of the lot, and judgment must accordingly be rendered for the plaintiff for twenty-one fortieths; but in pursuance of the stipulation in the report the case is remanded to the trial term for assessment by commissioners already agreed upon by the parties, of the defendants' compensation for buildings and improvements under the provisions of R. S., chapter 106, section 24.

> *Judgment for the plaintiff for twenty-one*
> *fortieths of the lot described in the writ.*
> *Case remanded as stated in the opinion.*