GEORGE D. CARLISLE ET AL.

*vs.*

BANGOR RECREATION CENTER

Penobscot.   Opinion, February 27, 1954.

*B. W. Blanchard,* for plaintiff.

*Allan Woodcock, Jr.,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, WEBBER, JJ.

WILLIAMSON, J.   On report.   This is a bill in equity brought by ten taxable inhabitants of the City of Bangor and of the Bangor Recreation Center under R. S., Chap. 95, Sec. 4, Par. XIII (1944) against the Bangor Recreation Center and its trustees to restrain the trustees (1) ·"from

issuing and selling general obligation bonds of the Bangor Recreation Center in the aggregate principal amount of $1,120,000, as voted by said Trustees," and (2) "from proceeding to construct an auditorium, as voted by said Trustees." The case is before us on bill, answers, replications and agreed statement of facts. Under the terms of the report the court shall "render such final decision as law and equity require."

The Bangor Recreation Center was created under P. & S. L., 1951, Chap. 90, and accepted by the voters of Bangor in December 1951. Section 1 reads:

"Sec. 1. 'Bangor Recreation Center' created. The inhabitants of and the territory within the city of Bangor, in the county of Penobscot shall be and hereby are constituted a body politic and corporate under the name of 'Bangor Recreation Center' for the purpose of acquiring property within said city of Bangor for recreational and municipal purposes, erecting, enlarging, repairing, equipping and maintaining on said property a building and related athletic, recreational and municipal facilities. Said district is hereby authorized to acquire land or buildings for said purposes by purchase, gift or lease and construct thereon, building or buildings for said purposes on land acquired as above. Property of said district shall be tax exempt."

Trustees appointed by the city council of Bangor manage its affairs. Under Section 4 the trustees determine what sums are needed to meet debt payments, interest, and other necessary expenses. Before April first in each year the trustees issue their warrant to the assessors of the City of Bangor "requiring that they assess the total sum so determined upon the taxable polls and estates within said district and to commit their assessment to the collector of said city of Bangor, who shall have all authority and powers to

collect said taxes as is vested by law to collect state, county and municipal taxes."

The trustees have voted:

(1) to authorize "the construction, original equipping and furnishing of an auditorium to be located on the Bass Park area leased by this Recreation Center from the City of Bangor, said auditorium to be of steel and brick construction, to have a seating capacity of approximately 7,500, to contain facilities for basketball games, for an indoor skating rink, for exhibitions and for other indoor events . . .," and

(2) to issue and sell bonds of the Bangor Recreation Center in the sum of $1,120,000 for the purpose of financing the construction of the auditorium.

The trustees are proceeding to offer the bonds for sale and will sell them unless restrained by the court. The available borrowing capacity of the City of Bangor under the constitutional debt limit of five percent of the last regular valuation is presently $35,198. *Me. Const., Art. IX, Sec. 15.*

Two issues are presented relating, first, to the private or public purposes of the auditorium, and, second, to the validity of the bond issue in light of the debt limit applicable to the City of Bangor.

Unless the proposed auditorium will serve public purposes, it cannot be financed or maintained through taxation. Taxes may be imposed for public purposes only. *Hamilton v. District,* 120 Me. 15, 112 A. 836 (1921) and cases cited. It is plain that the funds required in this instance in large measure must be raised by taxes.

The plaintiffs say that the purpose of the auditorium is private, not public. With this view we are unable to agree. In *City of Bangor, In Eq.* v. *Merrill Trust Co.,* 149 Me. 160,

99 A. (2nd) 298 (1953), we held the city could lease land in Bass Park to the Bangor Recreation Center for the location and erection of a recreation building with adequate parking facilities. In reaching our decision we necessarily considered the intended use was public in nature.

We said "It is common knowledge that auditoriums, as indeed in Bangor, and buildings of various types designed to serve the recreational and cultural needs of the public are found in parks." The cases cited illustrate the broad scope of uses public in nature. What is here termed an "auditorium" was in the *Bangor* case called a "recreation building." The difference in description is not material. The proposed use by the Bangor Recreation Center has not changed.

Turning to the second issue, we hold the proposed bond issue of the Bangor Recreation Center will not be a debt of the city, and hence will not be in any way affected by the constitutional debt limit applicable to the city. The importance of the point is obvious in view of the fact that the proposed bond issue exceeds the limited borrowing capacity of the city.

In *Kelley* v. *School District et al.*, 134 Me. 414, 187 A. 703 (1936), it was expressly decided that a school district could properly be established with the same geographical boundaries as a municipality. No sound objection can here be made, therefore, on the ground that the City of Bangor and the Bangor Recreation Center cover precisely the same area.

The two corporations, the City of Bangor and the Bangor Recreation Center, are separate and distinct. The Bangor Recreation Center is not made a part or agency of the city because the territory of each is the same, or the machinery for assessment and collection of the taxes within the "dis-

trict," to use the term of the charter, is furnished by the city.

In the *Bangor* case, *supra,* we said:

> "We turn to the problems of the Bangor Recreation Center. It is a 'body politic and corporate,' a quasi municipal corporation, covering 'the inhabitants of and the territory within the City of Bangor' for carrying out certain municipal purposes. The Bangor Recreation Center is a newcomer in the list of districts—water, school, sewer, light and power—each with a different name and for a different purpose. It is designed no doubt, apart from the administration of desired facilities, to give an opportunity for raising needed funds without use of the city's credit, although in the final event payments will be met by the taxpayers of Bangor."

See also *Baxter* v. *Waterville Sewerage District,* 146 Me. 211, 79 A. (2nd) 585 (1951); *Opinion of Justices,* 144 Me. 417, 66 A (2nd) 376 (1949); *Hamilton* v. *District, supra.*

Whether the policy of creating districts for special purposes is wise is not for us to consider. The rule was well stated by Chief Justice Dunn in *Kelley* v. *School District et al., supra,* at 421:

> "A statute cannot be invalidated because it seems to the court to inaugurate an inexpedient policy. All questions as to the expediency of a statute are for the Legislature. This is a line of inquiry which courts cannot pursue in determining the validity of a law."

The trustees may lawfully proceed to perform the acts which the taxpayers here seek to enjoin. An injunction will not issue. The entry will be

*Bill dismissed*