ARTHUR S. COOKMAN and MARTHA S. COOKMAN, his wife, HAROLD B. COOKMAN and HELEN H. COOKMAN, his wife, GERTRUDE COOKMAN SILLIMAN and HARPER SILLIMAN, her husband, FRANCES E. COOKMAN, ELIZABETH COOKMAN, MURRAY S. HOWLAND and MARGARET G. HOWLAND, his wife, and ALICE G. HOWLAND,

*vs.*

HENRY H. SILLIMAN.

*New Castle, March 4. 1938.*

*Reuben Satterthwaite, Jr.,* of the firm of Satterthwaite & Foulk, and *William S. Satterthwaite,* for complainants.

*William S. Potter,* of the firm of Ward & Gray, and *Daniel F. Wolcott,* for defendant.

THE CHANCELLOR: Title to the premises described in the contract here sought to be enforced was acquired in the year 1869 by Alfred Lee, Charles W. Howland and Samuel M. Harrington by two separate indentures. The conveyance in each deed was to the said grantees, "the survivor or survivors of them, his heirs and assigns, forever as joint tenants and not as tenants in common." In 1876 they conveyed the premises to The Board of Public Education in Wilmington in trust and upon condition that said Board should maintain, keep open, support and carry on schools in the building thereon erected known as the Howard School during certain periods of the year, from which no person or persons should be excluded by reason or on account of his, her or their race or color. The deed to the Board of Public Education further provided as follows:

"Upon neglect, refusal or failure of the said The Board of Public Education in Wilmington, its successors and assigns, so to maintain, keep open, support and carry on schools as aforesaid for and

during such period in each and every year, or upon the exclusion of any person or persons from said schools or the benefits and privileges thereof by reason or on account of his, her or their race or color, then this conveyance shall be void and the said buildings and lots of land upon which the same are erected and all the premises hereby conveyed * * * shall immediately revert to and revest in the said Alfred Lee, Charles W. Howland and Samuel M. Harrington, grantors above named, and the survivor or survivors of them and the heirs and assigns of such survivors, absolutely in fee simple, clear and discharged of the trusts above described."

On and after September 1, 1930, The Board of Public Education in Wilmington failed to maintain, keep open and carry on a school on the said premises. On said date the said Board abandoned said property and the buildings have been removed therefrom. It is agreed that the condition upon which the fee was conveyed has been breached and the title has reverted.

The three grantees mentioned in the deeds of 1869 who also were the grantors in the deed of 1876, are all dead. The first to die was Alfred Lee. Then Samuel M. Harrington died. Charles Howland, the last survivor, died intestate. His heirs at law and their spouses are the complainants.

The ability of the Howland heirs to convey a good fee simple title is challenged by the defendant on the ground that on breach of the condition mentioned in the deed of 1876 the title reverted not to the heirs of Howland alone, but to them and to the heirs of Lee and the heirs of Harrington, as tenants in common. The complainants contend that the principle of survivorship applied and that consequently on breach of the condition the title reverted to the last survivor among Lee, Harrington and Howland, or, in case of his decease, to his heirs.

The case has been argued almost altogether on the conception that the question of whether the title reverted, on breach of the condition, to the heirs of Howland alone, is dependent solely upon the effect of the deed of 1876 in that particular portion of its language wherein the right

of reverter and revestment is declared to be "in the said Alfred Lee, Charles W. Howland and Samuel M. Harrington, grantors above named, and the survivor or survivors of them and the heirs and assigns of such survivors absolutely in fee simple * * *."

If this clause in the deed of 1876 be the foundation of the claim of the Howland heirs, the defendant makes the point that the language is insufficient in law to support the claim, because, it is contended, as the language is claimed to create a joint tenancy in reverter with its incident of a right of survivorship, the language conveying the right fails to comply with the requirements of the statute applicable to the creation of joint tenancies, and so is to be taken as casting the title back upon the grantors as tenants in common.

The statute, *Revised Code* 1935, *Sec.* 3734, provides as follows:

"No estate, in joint tenancy * * * shall be held, or claimed * * * unless the premises * * * shall be expressly granted, devised or conveyed to such persons, to be held as joint tenants and not as tenants in common."

*Davis v. Smith,* 4 *Har.* 68, decided by the Superior Court in 1843 and commented upon by the old Court of Errors and Appeals in *Doe ex dem. Hearn v. Cannon,* 4 *Houst.* 20, 21, decided in 1869, are cited for the proposition that in order to create a joint tenancy the language of the statute must be strictly followed—that is to say the intent to create a joint tenancy must be made to appear not only by language of affirmative description but as well by language which negatively excludes the idea of a tenancy in common. According to the defendant, the only language which will satisfy the statute as creating a joint tenancy is such as amounts to the following—"to be held as joint tenants and not as tenants in common." Such phraseology is of the same pattern, only in the reverse, which Blackstone (2 *Bl. Com.* 194) describes as the usual

and safest in creating a tenancy in common, when the early common law held estates in common in the same disfavor which the statute now visits upon estates in joint tenancy.

Now whether *Davis v. Smith, supra,* supplemented by the comment thereon found in *Doe ex dem. Hearn v. Cannon, supra,* means to say that an estate in joint tenancy can be created only by use of the negative or excluding language of the statute in conjunction with its language of affirmative description, I do not find it necessary in this case to determine. In passing I may say, however, that I believe the uniform opinion of the bar always has been, since those cases were decided, that certainly the safest way, and therefore the one best to follow in practice, to create an estate in joint tenancy is to embody the exact language of the statute.

In the instant case, looking at the deed of 1876 where the reverting and revesting of the estate is provided for, a mere inspection of the language shows that the negative or excluding feature of the statute's language was entirely ignored. But, as was remarked a moment ago, I find it unnecessary to say whether that circumstance is of any consequence in this case.

This is for the reason that the deed of 1876 in its reverter clause conveys no "estate" to Lee, Harrington and Howland. That a possibility of reverter attached to a determinable or conditional fee is not an "estate," is conceded by the solicitors for the defendant. Such a possibility is not alienable, assignable, nor devisable, in the absence of statute. 10 *R. C. L.* 652; 21 *C. J.* 1017; 2 *Tiffany, Law of Real Property,* (1920) § 132. Therefore, as the statute is applicable only to "estates," it is not in terms applicable to a mere possibility of reverter.

The only estate conveyed by the deed was to the Board of Public Education in Wilmington, and that was a fee simple estate for the reason that it might never terminate.

The condition attached created of course the possibility that the fee simple in the grantees might terminate. If it did, then the fee returned to the grantors, and this without any re-entry by them but by operation of law. 1 *Tiffany, Law of Real Property*, (1920) §§ 93, 132.

From this it follows that the so-càlled reverter clause conveyed nothing to the three grantors. Before their conveyance to the Board of Public Education in Wilmington, they held the fee simple title as joint tenants. The deed to them conveyed such a title to be held in such a tenancy. It complied strictly with the statute. When the fee simple title of their grantees terminated, the law restored it to them as though they had never parted with it. It did not come back to them as something conveyed by the reverter clause. It came back to them because the fee had ceased to be in their grantees. Now when the title reverted I see no escape from the proposition that it fell back upon them in the exact condition that it was in when it had left. Their joint tenancy, as the sequel showed, had simply suffered a temporary interruption in enjoyment. That part of the reverter clause which described the persons to whom the land would revert could have been left out of the deed. As worded, it harmonizes entirely with the conception of a joint tenancy. At all events, the reverter clause conveys nothing, because the fee having been conveyed, there remained nothing further for the clause to operate upon as a conveyance of title.

If a tenant in severalty conveys a determinable fee and dies before the fee terminates, the right of reverter passes to his heirs at law. · *Pond v. Douglass*, 106 *Me.* 85, 75 *A.* 320; *North v. Graham*, 235 *Ill.* 178, 85 *N. E.* 267, 18 *L. R. A.*, *N. S.*, 624, 126 *Am. St. Rep.* 189. These cases adjudge that a right of reverter descends as would title to the land if the grantor had died seised of it. Applying that principle, it is difficult to see why, if the grantors be joint tenants, the right of reverter should not be subject to the same inci-

dents of suvivorship as the land itself would be subject to, in case it had never been conveyed, and accordingly descend to the heirs of the last survivor.

Decree for the complainants.