# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DAVID L. BANKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 10934-VCG |
| | ) | |
| MACKIE H. BANKS, individually and | ) | |
| as Executrix of THE ESTATE OF | ) | |
| RUSSELL V. BANKS, and THE | ) | |
| ESTATE OF RUSSELL V. BANKS, | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION

Date Submitted: December 17, 2015
Date Decided: March 31, 2016

William M. Kelleher and Phillip A. Giordano, of GORDON FOURNARIS & MAMMARELLA, P.A., Wilmington, DE, *Attorneys for Petitioner*.

Charles T. Armbruster, III, of TOMASETTI LAW, LLC, Fenwick Island, DE, *Attorney for Respondents*.

GLASSCOCK, Vice Chancellor

At common law, real property transferred equally to two or more persons jointly was presumed to be held thereafter by those persons as joint tenants with right of survivorship, unless the documents of transfer provided explicitly that the property would be held as tenants in common.[1] The primary difference between these types of joint estates is the treatment of ownership following the death of a joint tenant: in the case of the former, the decedent's interest automatically vests in the surviving joint tenant; in the latter case, the fractional interest held by the decedent passes through his estate. By the end of the 18th century, the feudal concerns that led to this presumption had lost potency, and the harsh results often worked on heirs by the presumption, together with the recognition that full alienability of property maximized its value, made the common-law presumption socially undesirable.[2] Legislatures in jurisdictions in this country have since

---

[1] 2 Tiffany Real Prop. § 421 (3d ed. 2015). *See Cookman v. Silliman*, 2 A.2d 166, 167 (Del. Ch. 1938) (citing 2 Bl.Com. 194); *see also Durant v. Hamrick*, 409 So. 2d 731, 733 (Ala. 1981) ("At English common law, joint tenancies rather than tenancies in common were favored. . . . As a matter of law, where a deed conveyed property to two or more persons jointly, the common law presumed that the interest created in the grantees was that of a joint tenancy. . . . In order to create a tenancy in common, it was necessary that the conveyance be specific and affirmatively provide language to confirm the grantor's intent to create a tenancy in common.") (citations omitted); *Mette v. Feltgen*, 27 N.E. 911 (Ill. 1891), *aff'd*, 36 N.E. 81 (1894) ("Where an estate was conveyed to a plurality of persons, without adding any restrictive, exclusive, or explanatory words, such conveyance, at common law, was held to constitute the grantees joint tenants, and not tenants in common, and, in order to create a tenancy in common by deed, it was necessary to add exclusive or explanatory words, so as to expressly limit the estate to the grantees to hold as tenants in common, and not as joint tenants.").

[2] *See generally* John V. Orth, *The Perils of Joint Tenancies*, 44 Real Prop. Tr. & Est. L.J. 427 (Fall 2009) [hereinafter Orth, *Joint Tenancies*]; *see also* Sheldon F. Kurtz, Moynihan's Introduction to the Law of Real Property 278–79 (5th ed. 2011) [hereinafter Kurtz, Moynihan's Introduction]; *Overheiser v. Lackey*, 100 N.E. 738, 739 (N.Y. 1913) (explaining that legislation

curbed and even eliminated[3] the estate of joint tenancy with right of survivorship ("joint tenancy WROS").[4]

Precisely two hundred years ago, the Delaware General Assembly eliminated, not the estate itself, but the presumption in its favor. By act of February 16, 1816, the legislature provided that "any law, usage or custom to the contrary notwithstanding," no estate in real property shall be created "unless the premises therein mentioned shall be expressly granted, devised or conveyed to such persons to be held as joint tenants and not as tenants in common."[5] This has remained our law, with almost exactly the same statutory language controlling today; the current statute disallows creation of a joint tenancy WROS in real property by grant, devise, or conveyance "unless the premises therein mentioned

---

hostile to joint tenancies WROS was enacted throughout the Union because "the political policy has been to encourage the distribution of land among the people.") (internal quotation and citation omitted); *Smith v. Cutler*, 623 S.E.2d 644, 646 (S.C. 2005) ("Courts began favoring tenancies in common over joint tenancies because the harsh results of survivorship rights often encumbered the land and defeated the intention of the grantor.").

[3] *See, e.g.*, Tenn. Code Ann. § 66-1-107 (2004) ("In all estates, real and personal, held in joint tenancy, the part or share of any tenant dying *shall not descend or go to the surviving tenant or tenants*, but shall descend or be vested in the heirs, executors, or administrators, respectively, of the tenant so dying, in the same manner as estates held by tenancy in common.") (emphasis added); Alaska Stat. § 34.15.130 (1970) (abolishing joint tenancies with right of survivorship); *Nunn v. Keith*, 268 So. 2d 792, 794–97 (Ala. 1972) (noting that the Alabama legislature abolished the joint tenancy with right of survivorship in the early 1800s, but then revived it in 1945, for those cases where the parties had clearly expressed their intent to create a joint tenancy with right of survivorship).

[4] The term "joint tenancy" implies (though perhaps not conclusively) an estate with right of survivorship. *See infra* note 34. For purposes of clarity, in light of the arguments here, I use the ugly and unwieldy term "joint tenancy WROS" to mean a joint tenancy, as opposed to a tenancy in common or other estate in land.

[5] 5 Del. Laws 174 (1816).

are expressly granted, devised or conveyed to such persons, to be held as joint tenants and not as tenants in common."[6]  The case before me poses a simple question, which remarkably has not been directly addressed in the two hundred years that this language has controlled the conveyance of realty: what words are required to "expressly" convey property "to be held as joint tenants and not as tenants in common?"  Is a recitation of the precise verbiage of the statute required to create the disfavored estate?  If not, is an explicit negation of a tenancy in common required? Or is it sufficient for the drafter to employ language leaving no doubt that the estate is to be held as a joint tenancy WROS, and thus not as a tenancy in common?

For two hundred years careful draftsmen intending to create a joint tenancy WROS have created instruments that quoted the statutory language;[7] this case involves a less-careful—or perhaps bolder—draftsman, who used language making clear that the estates intended were joint tenancies WROS and not tenancies in common, but who eschewed or neglected the incantation of the statutory language. Nonetheless, I find that the statute is satisfied where the language used is consistent only with a joint tenancy WROS, and that the instruments in question

---

[6] 25 *Del. C.* § 701.

[7] *See Cookman*, 2 A.2d at 167 (addressing a determinable fee with a possibility of reverter, but observing that "I believe the uniform opinion of the bar always has been . . . that certainly the safest way, and therefore the best one to follow in practice, to create an estate in joint tenancy is to embody the exact language of the statute.").

here created such estates.

## I. BACKGROUND

The pertinent facts can be stated briefly. Petitioner David L. Banks is the brother of Russell V. Banks,[8] who died testate on July 4, 2012.[9] Before Russell's death, the brothers together owned fifteen parcels of real estate (the "Properties") in Sussex County, Delaware.[10] The granting language of the deed to each parcel states that the property was conveyed to David and Russell as "joint tenants with right of survivorship."[11] The Petitioner contends this language granted joint tenancies WROS, and that upon Russell's death, the Properties passed to him in full.

Respondent Mackie H. Banks serves as the executrix of the Estate of Russell V. Banks.[12] Mackie filed an Inventory for Russell's Estate on December 26, 2013; an Amended Inventory on August 11, 2014; and a Second Amended Inventory on March 18, 2015 (the "Inventory") with the Register of Wills of the State of Delaware in and for Sussex County.[13] The Inventory asserts, contrary to Petitioner's claim that he owns the Properties in full, that Russell's Estate holds a

---

[8] Petition ¶ 3.
[9] Answer ¶ 3. The Petition incorrectly states the date of Russell's death as July 4, 2006. *See* Petition ¶ 3. It is clear from the submissions of both parties, however, that the former date—July 4, 2012—is correct.
[10] Petition ¶¶ 6–21.
[11] *Id.* at ¶ 24. I use the parties' first names throughout this Opinion for the sake of clarity. No disrespect is intended.
[12] *Id.* at ¶ 3.
[13] *Id.* at ¶ 29.

50% ownership interest in the Properties.[14]  That is, the Respondents assert that the Properties were conveyed to the brothers not as joint tenants WROS, but as tenants in common.

The Petitioner filed a Petition to Quiet Title on the Properties on April 22, 2015, and filed an Amended Verified Petition to Quiet Title (the "Petition") on May 5, 2015.  The Petitioner seeks a declaration that the Properties were conveyed to David and Russell as joint tenants WROS, and that the Estate holds no interest in the Properties; an order requiring the Estate to file a corrected Inventory reflecting that it has no interest in the Properties; and an award of damages, costs, and attorneys' fees.

On August 3, 2015, the Petitioner filed a Motion for Judgment on the Pleadings.  The Respondents filed a Cross-Motion for Judgment on the Pleadings on September 9, 2015.  After briefing, I heard oral argument on the cross-motions on December 3, 2015, and asked for supplemental briefing, which is complete.[15]  This Opinion resolves those motions.

## II. ANALYSIS

### A. Legal Standard

The standard for judgment on the pleadings is well settled.  Court of

---

[14] *Id.*

[15] Following oral argument, I asked the parties to submit supplemental letters to the Court addressing whether the ability to break a joint tenancy through a "straw-man conveyance" under the common law arose before or after the earliest version of the language now included in 25 *Del. C.* § 701 was first adopted by the Delaware General Assembly.

Chancery Rule 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[16] A motion for judgment on the pleadings may be granted only where no material issue of fact exists, and where the moving party is entitled to judgment as a matter of law.[17] "When there are cross-motions for judgment on the pleadings, the [C]ourt must accept as true all of the non-moving party's well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party."[18] A judgment on the pleadings "is a proper framework for enforcing unambiguous contracts,"[19] like those before the Court here, because there is "no need to resolve material disputes of fact."[20]

*B. The Parties' Contentions*

The parties do not dispute any underlying facts regarding the Properties; they disagree only as to the proper interpretation of 25 *Del. C.* § 701, and its resulting effect on the parties' ownership interests in the Properties. Section 701 reads in full:

> No estate, in joint tenancy, in lands, tenements or hereditaments shall
> be held or claimed by or under any grant, devise or conveyance made

---

[16] Ct. Ch. R. 12(c).

[17] *OSI Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006).

[18] *Id.* (citation omitted). The Court may "consider the unambiguous terms of exhibits attached to the pleadings, including those incorporated by reference." *Id.* (citation omitted).

[19] *Id.* (quoting *NBC Universal, Inc. v. Paxson Commc'ns Corp.,* 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

[20] *Cooper Tire & Rubber Co. v. Apollo (Mauritius) Holdings Pvt. Ltd.*, 2013 WL 5787958, at *3 (Del. Ch. Oct. 25, 2013) (quoting *Lillis v. AT&T Corp.*, 904 A.2d 325, 329–30 (Del. Ch. 2006)).

6

to any persons, other than to executors or trustees, *unless the premises therein mentioned are expressly granted, devised or conveyed to such persons, to be held as joint tenants and not as tenants in common.*[21]

Specifically at issue is whether or not Section 701 should be read to require that the document of conveyance either quote the statutory language or, at minimum, recite both positive language, granting the property in joint tenancy, *and* negative language, stating that the property is not conveyed in tenancy in common, in order to create a joint tenancy WROS.

The Petitioner argues that the Respondents mistakenly claim an interest in the Properties by their assertion that the brothers owned the Properties as tenants in common. By contrast, the Petitioner contends that, because the deeds expressly state that Russell and David took the Properties as "joint tenants with right of survivorship," the deeds unambiguously created joint tenancies WROS, and not tenancies in common. He asserts that redundant negative language disavowing a tenancy in common is *not* required—that is, that a "right of survivorship" is so clearly incompatible with a tenancy in common that Section 701, and the policy behind it, is satisfied by the language in the deeds to the Properties. In the alternative, the Petitioner contends that, regardless of whether the language "joint tenants with right of survivorship" is sufficient under Section 701 to create a joint tenancy WROS instead of a tenancy in common, the "survivorship" language

---

[21] 25 *Del. C.* § 701 (emphasis added).

cannot be ignored.  Accordingly, the Petitioner asks the Court, at the least, to interpret the deeds as conferring a tenancy in common for life, followed by a contingent remainder in fee simple to the survivor.  In either case, the Estate would take no interest in the Properties.

The Respondents, on the other hand, argue that Delaware case law demonstrates that both positive and negative language is required under Section 701 and that, even if such an interpretation leads to a result contrary to the parties' express intent, any change to the requirements of Section 701 is for the legislature, not the judiciary, to initiate.  Finally, the Respondents point out that "joint tenancy" is a term of art that implies a right of survivorship; they argue that the General Assembly's requirement that documents of conveyance express that an estate be held "as joint tenants *and not* as tenants in common" *necessarily* requires both positive and negative language to create a joint tenancy WROS.  To not require negative language, the Respondents contend, effectively reads the words "not as tenants in common" out of the statute.

I address the parties' contentions below.

*C. The Properties Were Conveyed to David and Russell as Joint Tenants with Right of Survivorship*

I look first to the explicit language of Section 701, and then to the policy behind it, and find that the statute does not require both positive and negative language where it is clear from the conveying language the type of tenancy the

parties intend to create. I then turn to the case law addressing Section 701 and find no persuasive authority mandating the use of both positive and negative language under this statute. For both of these reasons, I determine that the language in the deeds conveying the Properties to the brothers "as joint tenants with right of survivorship" is sufficient under Section 701 to create joint tenancies WROS.

### 1. The Language of Section 701 Does Not Indicate that the General Assembly Required Particular Words or an Explicit Negation of a Tenancy in Common in Order to Create a Joint Tenancy with Right of Survivorship

Section 701 provides that no estate in joint tenancy is created "unless the premises . . . are expressly granted, devised or conveyed . . . , to be held as joint tenants and not as tenants in common."[22] The statute could, but does not, include required language within quotation marks or otherwise direct that specific statutory language be used.[23] Further, nothing on the face of the statute expressly requires that the language of conveyance include an explicit rejection of a tenancy in common in order to create a joint tenancy WROS. The statute simply requires that the language "expressly" convey the property in a way demonstrating that the estate created is to be held in joint tenancy WROS, and not as a tenancy in common.

---

[22] *Id.*

[23] *See, e.g.*, *id.* at § 2221 (requiring deeds conveying condominium units to contain a specific quoted provision included in the statute).

## 2. The Policy Behind Section 701 is Not Served by Requiring Both Positive and Negative Language

Relevant to this analysis are two types of joint ownership: joint tenancies WROS and tenancies in common. Under a joint tenancy WROS, property is held jointly by two or more persons, each "regarded as the tenant of the whole for purposes of tenure and survivorship, while for purposes of alienation and forfeiture each has an undivided share only."[24] "Upon the death of one of the joint tenants his interest does not descend to his heirs or pass under his will; the entire ownership remains in the surviving joint tenant(s)."[25] To create a joint tenancy, four "unities" are required: unity of time, title, possession, and interest.[26] A cotenant may break a joint tenancy WROS by disturbing the unities of title and time through a "straw-man" conveyance, thereby creating a tenancy in common.[27]

A tenancy in common, by contrast, requires only the unity of possession; each cotenant holds an equal right to possess the jointly held premises, so long as

---

[24] 2 Tiffany Real Prop. § 418 (3d ed. 2015).

[25] Kurtz, Moynihan's Introduction, *supra* note 2, at 281.

[26] *E.g., Farmers Bank of State of Del. v. Howard*, 258 A.2d 299, 301 (Del. Ch. 1969), *aff'd in part sub nom.*, *Howard v. Farmers Bank*, 268 A.2d 870 (Del. 1970). That is, "joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession." 2 Tiffany Real Prop. § 418 (3d ed. 2015) (citations omitted).

[27] A joint tenant WROS can disturb the unities of title and time, thereby breaking the joint tenancy, through a straw-man conveyance: the original owner conveys her interest in the property to a straw man, who then conveys the property back to the original owner; the result is a tenancy in common. *See, e.g.*, *In re Ellingsworth*, 266 A.2d 890, 891 (Del. Ch. 1970); *see also* Kurtz, Moynihan's Introduction, *supra* note 2, at 282–83.

that possession is not to the exclusion of the other cotenants.[28]  Unlike with a joint tenancy WROS, "since [the cotenants] hold separate interests, [they] need not have equal shares in the property," and need not obtain their titles simultaneously.[29] Additionally, as tenancies in common do not include a right of survivorship, a cotenant in common can leave her share to any beneficiary upon death.[30]

At common law, a transfer consistent with the four unities created a joint tenancy WROS, unless the language of transfer specified a tenancy in common.[31] However, by act of 1816, the Delaware General Assembly enacted a statute, which contained the language that exists, near-verbatim, in current Section 701, and which reversed the historical presumption from joint tenancies WROS to tenancies in common.[32]  This shift reflected a general policy of the era to discourage ownership under a form of tenancy—the joint tenancy WROS—that places unpalatable restrictions on the alienability of property.[33]  To my mind, the

---

[28] 2 Tiffany Real Prop. § 426 (3d ed. 2015).

[29] *Id.* (citation omitted).

[30] *Id.* at § 427.

[31] *See supra* note 1.

[32] *See Short v. Milby*, 64 A.2d 36, 52 (Del. Ch. 1949) ("[J]oint tenancies are not favored and can only be created by clear and definite language not reasonably capable of any different construction.") (citations omitted).

[33] *See* Orth, *Joint Tenancies*, *supra* note 2, at 428.  I note, however, that it was possible, at the time the earliest predecessor statute to Section 701 was established, to break a joint tenancy through a straw-man conveyance.  *See id.* ("A statute enacted during the reign of King Henry VIII made joint tenancies partitionable by either joint tenant, making the interest of each joint tenant alienable, although not inheritable or devisable because of the right of survivorship.") (citing 31 Hen. 8, c. 1 (1539) (Eng.)).  Because Delaware inherited English law as it existed at the time of the Declaration of Independence, *Claudio v. State*, 585 A.2d 1278, 1291 (Del. 1991)

11

legislative intent is clear. By 1816, joint tenancy of estates in real property, with survivorship, was disfavored; the intent of the legislature, expressed in the statute, was to provide that, where there is *ambiguity* as to the type of joint estate created by a deed or other instrument, the conveying language should be interpreted as forming a tenancy in common, and not a joint tenancy WROS. The statute, I presume, reflected an intent to reduce the incidence of creation of joint tenancies WROS, and, importantly, to prevent the *inadvertent* creation of such an estate, by default and to the unintended detriment of the heirs. However, in cases where the language of the conveyance leaves no ambiguity as to the type of joint estate intended by the parties, the legislative will as expressed by statute permits parties to create a joint tenancy WROS. In such a case, where the language otherwise unambiguously conveys a joint tenancy WROS, the legislative intent is satisfied, and redundant language disclaiming a tenancy in common serves no function; the parties have opted, as permitted by statute, for the more restrictive type of joint ownership.

The conveying language here is unambiguous; the deeds convey the Properties to Russell and David as "joint tenants with right of survivorship." All of the parties acknowledge that tenancies in common do not allow for a right of survivorship; of the two estates, that characteristic exists only with a joint tenancy

(citing Del. Const. art. 25 (1776)), the joint tenancy WROS has always been breakable as a matter of Delaware law.

12

WROS.   From a policy perspective, no legislative purpose is advanced by requiring both positive and negative language, as it is clear from the language here employed that the parties intended to create a joint tenancy WROS and not a tenancy in common.

The Respondents make an argument based on the language of the statute. They point out that the term "joint tenancy" is understood to encompass a right of survivorship incompatible with a tenancy in common.[34]   They argue that, by requiring that conveying language express that an estate is to be held "in joint tenancy *and not* as tenants in common," the General Assembly must have intended to require both positive and negative language to create a joint tenancy WROS— otherwise, the phrase "and not as tenants in common" is mere surplusage.  I note, however, that the statute is in derivation of a common-law presumption in favor of tenancies in common.   The most likely explanation for the inclusion of the language "as joint tenants and not a tenants in common" is to provide clarity in this departure from common law.[35]   Tellingly, the Respondents have provided no explanation as to how the legislative purpose would be served by their proposed statutory construction, the result of which would be that a clear expression of intent

---

[34] *See, e.g.,* Black's Law Dictionary 1313 (5th ed. 1979) (stating that a "[j]oint tenancy" is "[a]n estate . . . arising by purchase or grant to two or more persons. . . . The primary incident of joint tenancy is survivorship") (emphasis omitted).

[35] In fact, the court in *Cookman* describes the language now embodied in Section 701 as a simple reversal of the language recommended by Blackstone to negate the common-law presumption *in favor* of joint tenancy WROS.  *Cookman*, 2 A.2d at 167.

to form a joint tenancy WROS should fail, where the drafter neglected to include what the Respondents themselves see as redundant negative language.[36] In other words, nothing in the language of the statute convinces me that explicit language of negation is required where, as here, the language of conveyance leaves no doubt that survivorship is intended and that the estates meant to be conveyed are joint tenancies WROS and not tenancies in common.

I note further that the Respondents' reading of the statute would lead to an absurd result here, inimical to the legislative intent as I understand it and have expressed it above. In interpreting a contract, the Court must attempt to give effect to all its terms, rendering no portion null or superfluous.[37] Here, even were I to find that the requirements of Section 701 have *not* been satisfied, I would still need to read the deeds to give effect, if possible, to the phrase "with right of survivorship." Such a reading—supposing that I find that the parties cannot have intended a statutorily impermissible joint tenancy WROS—would indicate that the

---

[36] The Petitioner advances its own argument based on the fact that "joint tenancy" implies the right of survivorship. In *Davis v. Smith*, discussed below, our Superior Court found a grant to cotenants "jointly, their heirs and assigns forever" insufficient to create a joint tenancy WROS under the statute. 4 Del. 68, 68 (Del. Super. 1843). The Petitioner nonetheless posits that because the term "joint tenancy" implies a right of survivorship, operative language stating only that the Properties were conveyed to the brothers "as joint tenants" would be enough to satisfy Section 701; the Petitioner argues that "joint tenancy" is "a long-standing term of art used exclusively to refer to joint tenancies with the inherent right of survivorship, and never to refer to tenancies in common." In light of the actual language of conveyance here, I need not reach this issue.

[37] *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("[C]ourts must read the contract in its entirety and give effect to all of its terms and provisions . . . .").

14

language of the deeds likely must be construed as creating concurrent *life estates,* with contingent remainders in the survivor.[38] This construction would create a property interest that would appear permissible under Section 701, and that gives effect to the provision "with right of survivorship." Creation of such an estate based on the language here, however, would likely frustrate the very purpose of the legislature: to discourage creation of an estate with limited alienability, but at the same time, to allow parties to create such an estate where their intent is clear. A life estate with contingent remainder implicates the same concerns as to alienability and devisability as does a joint tenancy WROS, and creation of such an estate is contrary to the intent expressed in the deeds. Such a result, so clearly at odds with the policy behind Section 701, could not have been the intent of the legislature in drafting this statute. Rather, the more sensible interpretation of the "with right of survivorship" language is as I have determined above—that the deeds instead convey a joint tenancy WROS.

---

[38] *See* Kurtz, Moynihan's Introduction, *supra* note 2, at 279–80 ("Considerable litigation has arisen where a conveyance does not track the statutory language, but it is claimed that the language used manifests an intention to create a joint tenancy. Thus, if O conveys Blackacre to 'B and C and to the survivors of them, his heirs and assigns' do B and C and take as joint tenants in fee, or do B and C take a life estate as tenants in common with vested cross-remainders for life, with a contingent remainder in fee in the survivor? *Or, what if O conveys Blackacre 'to B and C as joint tenants and to the survivor of them, his heirs and assigns.' Do B and C take as joint tenants in fee, or as joint tenants for life with a contingent remainder in fee in the survivor?* Different answers have been given by the courts to these questions. The language of the applicable statute may be controlling; but in the absence of controlling statutory language the principal issue is whether the provision for survivorship in the conveyance expresses an intention to create a joint tenancy or a contingent remainder in the survivor.") (emphasis added) (internal citations omitted).

### 3. Delaware Case Law Does Not Require Both Positive and Negative Language Under Section 701

Neither party has presented any controlling case law addressing both the precise language at issue in this case—"as joint tenants with right of survivorship"—and whether that language is sufficient under Section 701 to create a joint tenancy WROS. After surveying the cases that apply Section 701 (or the near-identical predecessor statutes thereto) to other conveying language, I do not find any convincing authority for Respondents' position that Section 701 requires both positive and negative language to create a joint tenancy WROS.

In *Short v. Milby*,[39] this Court found that a conveyance to two individuals "jointly and not as common tenants their Heirs and Assigns, forever" created a joint tenancy. While this case involved both positive language—"jointly"—and negative language—"and not as common tenants"—the Court indicated its view that negative language is not necessarily required to establish a joint tenancy WROS.[40] Specifically, the Court expressed in *dictum* that, "[i]t may be safer to use the words of the statute . . . , but that is not absolutely essential if the grantor's intent to create a [joint tenancy WROS] clearly appears from the language used."[41] In a more recent decision by the Bankruptcy Court in *In re Kelly*,[42] the court came

---

[39] 64 A.2d 36 (Del. Ch. 1949).
[40] *Id.* at 38.
[41] *Id.* (citations omitted).
[42] 289 B.R. 38 (Bankr. D. Del. 2003), *aff'd*, 316 B.R. 629 (D. Del. 2004) (emphasis added) (citations omitted).

16

to a similar conclusion, finding that "Delaware law mandates that the creation of a joint tenancy be expressly stated *or* that the granting instrument 'negatively state' that the persons holding the property are not tenants in common."[43]  While the latter case is not binding authority here, I find the Bankruptcy Court's interpretation sound in light of the discussion above concerning the policy behind Section 701.

The cases proffered by the Respondents do not persuade me that Section 701 requires both positive and negative language.  In *Bullen v. Davies*,[44] for example, the Delaware Supreme Court found that the deed in question, transferring property to "Dan L. Davies and Elsie M. Davies, his wife, George H. Bullen, Jr., and Patricia D. Bullen, his wife" did "not comply with 25 Del. C. § 701, prohibiting the creation of a joint tenancy except by express words conveying as joint tenants and not as tenants in common."[45]  The statement in *Bullen* simply tracks the statute, without elucidation, and the holding is consistent with my decision here.

The Respondents also cite two Superior Court cases declining to find that a joint tenancy WROS had been created as pertinent here.  First, in *Davis v. Smith*,[46] the Superior Court held that a devise to two individuals "jointly, their heirs and

---

[43] *Id*. at 42 (emphasis added).  *See also* 2 Tiffany Real Prop. § 424 (3d ed. 2015) ("[I]t is not necessary to use the exact words of the statute in order to show an intention to create a joint tenancy.  It is sufficient if the language employed be such as to show clearly and explicitly that the parties intend that the lands are to pass in joint tenancy.") (citation omitted).

[44] 209 A.2d 81 (Del. 1965).

[45] *Id*. at 83.

[46] 4 Del. 68 (Del. Super. 1843).

17

assigns forever" created a tenancy in common, and not a joint tenancy WROS.[47]

Second, in *Doe ex dem. Hearn v. Cannon*,[48] the Superior Court recited the language of the predecessor statute to Section 701, and found that a devise to two individuals "to be equally divided between them" was insufficient to create a joint tenancy WROS.[49] Both of these cases are distinguishable on the operative, conveying language; here, the addition of "with right of survivorship" makes abundantly clear the type of tenancy being conveyed, unlike the simple conveyances of property "jointly" or "to be equally divided" as at issue in *Davis* and *Hearn*. Moreover, I note that neither of these cases expressly state that negative language is required; in *Davis*, the court simply finds, without lucubration, that the language of the devise creates a tenancy in common, and the *Hearn* court only quotes the statute in reaching its result, and cites to *Davis*.[50] Neither case directly addresses whether the statute requires negative language to create a joint tenancy WROS. The holdings of these cases are not inconsistent with my rationale here, for reasons expressed above.

The Respondents cite only two cases that state that both positive and negative language are required to create a joint tenancy WROS under Section 701.

---

[47] *Id*. at 68.

[48] 9 Del. 20 (Del. Super. 1869).

[49] *Id*. at 25.

[50] In *Hearn*, the court notes that the language that the parties there employed would not have created a joint tenancy WROS, even under the common law. *Id*.

18

First, in *Townsend Corp. of America v. Davidson*,[51] this Court considered a deed conveying stock to a husband and wife "as joint tenants," and was charged with deciding whether the property was conveyed as a joint tenancy WROS or as a tenancy by the entireties.[52] After noting that the statutory policy behind Section 701 was "inapplicable" to the case before it, because the matter did not concern tenancies in common, the Court then stated that "[i]t is true that negative language is called for by the statute in situations where there is a desire to create a joint tenancy as opposed to a tenancy in common in real estate."[53] The Court cited no authority for the latter contention, which I note was *dictum* not pertinent to the issue before it.

---

[51] 181 A.2d 219 (Del. Ch. 1962).

[52] A tenancy by the entireties "is the tenancy by which husband and wife at common law hold land conveyed or devised to them by a single instrument which does not require them to hold it by another character of tenancy." 2 Tiffany Real Prop. § 430 (3d ed. 2015) (citations omitted). Like a joint tenancy WROS, a tenancy by the entireties "cannot be created unless the four essential common law unities, namely, interest, title, time and possession, coexist." *Id.* (citations omitted). That is, a tenancy by the entireties "though differing from a joint tenancy in some particulars, as seizin, possibility of severance and the nature of the survivor's interest, is essentially a form of joint tenancy [WROS], modified by the common-law theory that husband and wife are one person." *Id.* (citations omitted). The most important of these distinctions between joint tenancies WROS and tenancies by the entireties is that, in the case of the latter, "the survivor of the marriage, whether the husband or the wife, is entitled to the whole, which right cannot be defeated by a conveyance by the other to a stranger, as in the case of a joint tenancy, nor by a sale under execution against such other." *Id.* (citations omitted). Courts have generally held that a conveyance to husband and wife that satisfies the four unities will create a tenancy by the entireties, unless there is "an intention, clearly expressed in the instrument, that they shall take as tenants in common or as joint tenants." *Id.* at § 431 (citing *Godman v. Greer*, 105 A. 380 (Del. Orphans' Ct. 1918) (holding that "a devise of land to two persons then married as tenants in common by express words makes them tenants in common and not tenants by the entireties")).

[53] *Id.* at 221.

19

Similarly, in *Pagliaro, Inc. v. Zimbo*,[54] the Superior Court considered a deed to three individuals, two of whom were a married couple, "as Joint Tenants with Right of Survivorship, and not as Tenants in Common."[55] Again, the issue was whether, with respect to the couple, a tenancy by the entireties was created. The *Pagliaro* court stated that "[a]lthough *the law requires negative language to create a joint tenancy as opposed to a tenancy in common* in real estate, . . . such negative language is not required when creating a joint tenancy as opposed to a tenancy by the entireties."[56] In neither *Pagliaro* nor *Townsend Corp.* was Section 701 directly at issue. Because neither court was required to carefully assess, as this Opinion attempts to do, the language of or policy behind Section 701 as it applies to a conveyance of realty as either a joint tenancy WROS or tenancy in common, I decline to follow these cases.

*D. Courts in Other Jurisdictions Have Arrived at the Same Conclusion as I Do Here*

Courts in other states, interpreting similar statutes, have adopted reasoning consistent with mine here to arrive at the same result. The Supreme Court of Illinois in *Slater v. Gruger*[57] addressed, and rejected, a contention precisely like that advanced by the Respondents here—that in order to create a joint tenancy

---

[54] 1987 WL 10275 (Del. Super. Apr. 16, 1987).
[55] *Id.* at *2.
[56] *Id.* (emphasis added).
[57] 46 N.E. 235 (Ill. 1897).

WROS, the Illinois statute (similar to our Section 701)[58] required a deed to contain both positive *and* negative language. The court found that the statute reflected the legislature's disfavor of the right of survivorship, and that the object of the statute is to require a clear and explicit showing that the property was not intended to pass in tenancy in common, in order to create a joint tenancy WROS. Where the intention to create a joint tenancy WROS is made clear by the language of the instrument, the *Slater* court found, "the particular phraseology employed" to manifest this intention is not important.[59] The deed at issue contained a granting clause stating that the conveyance to the grantee was made "in joint tenancy" and defined the grantee as husband and wife "and the survivor of them."[60] The court held that, by expressly stating that the conveyance was made "in joint tenancy" and by connecting that conveyance to a right of survivorship—a right that cannot exist in a tenancy in common—the instrument had as "completely negatived the creation of an estate in tenancy in common as any words that could have been employed."[61]

Consistent with *Slater*, the New Jersey Court of Chancery, interpreting

---

[58] Both 765 Ill. Comp. Stat. § 1005/1 and its predecessor—the statutes in question in *Slater*—provide that no estate in joint tenancy shall be claimed under any conveyance "unless the premises therein mentioned *shall expressly be thereby declared to pass not in tenancy in common but in joint tenancy*." (emphasis added).

[59] *Slater*, 46 N.E. at 237. Subsequent cases have followed *Slater* in reaching a similar result. *See, e.g.*, *Engelbrecht v. Engelbrecht*, 153 N.E. 827, 829 (Ill. 1926); *Overheiser*, 100 N.E. at 739; *McGrane v. Wiener*, 49 N.Y.S.2d 23, 24 (N.Y. App. Div. 1944).

[60] *Slater*, 46 N.E. at 236.

[61] *Id*. at 237.

21

statutory language similar to our Section 701,[62] reached the same conclusion: the statute does not require explicit negation of a tenancy in common to create a joint tenancy WROS. In *Coudert v. Earl*,[63] the court reasoned that the purpose of the statute was to prevent joint tenancies WROS from being inferred from the context of the conveyance, and therefore required a "direct and express assertion" to create such an estate.[64] However, the statute "does not undertake to prescribe any particular mode of language" to create a joint tenancy WROS.[65] Accordingly, language unambiguously conveying a joint tenancy WROS was sufficient to that purpose under New Jersey law.[66]

For all the foregoing reasons, I find that the Properties were held by David and Russell as joint tenants with right of survivorship.

### E. The Parties Must Bear Their Own Legal Fees

The Petitioner seeks to shift his attorneys' fees to the Respondents. Under the prevailing American Rule, parties bear their own costs of litigation.[67] An exception to that rule is that, where litigation is brought or conducted in bad faith,

---

[62] N.J. Stat. Ann. § 46:3-17, and the predecessor statute thereto, both provide that
no estate shall be considered and adjudged to be an estate in joint tenancy, *except it be expressly set forth* in the grant or devise creating such estate *that it was or is the intention* of the parties *to create an estate in joint tenancy and not an estate of tenancy in common*, any law, usage, or decision theretofore made, to the contrary notwithstanding.
(emphasis added).

[63] 18 A. 220 (N.J. Ch. 1889).

[64] *Id*. at 220.

[65] *Id*.

[66] *Id*.

[67] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 850 (Del Ch. 2005).

equity supports a shifting of fees from the innocent to the vexatious party.[68]  The decision whether or not to shift attorneys' fees rests in the sound discretion of the Court.[69]  Here, I do not find that Mackie, as executrix, acted in bad faith in seeking to enforce a statutory right on behalf of Russell's Estate.  The law surrounding Section 701, as described at length above, was unsettled at the time this action was brought; it was not only appropriate, but required in equity, for Mackie to attempt to assemble and distribute the Estate in a way consistent with the law, and for the benefit of the Estate's beneficiaries, even if that distribution was contrary to the apparent intent of the parties to the deeds in question.  Therefore, because I find no special circumstances warranting a shifting of fees, each party bears its own costs of litigation.

### III. CONCLUSION

For the foregoing reasons, I find that language conveying property as "joint tenants with right of survivorship" is sufficient to create a joint tenancy WROS, and not a tenancy in common, under 25 *Del. C.* § 701.  Accordingly, the Petitioner's Motion for Judgment on the Pleadings is granted, and the Respondents' Cross-Motion for Judgment on the Pleadings is denied.  The parties should supply an appropriate form of order.

---

[68] *Id.* at 850–51 ("The bad faith exception to the American Rule applies in cases where the court finds litigation to have been brought in bad faith or finds that a party conducted the litigation process itself in bad faith, thereby unjustifiably increasing the costs of litigation.")
[69] *Id.* at 850.